IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 5:09-CV-110-BO

| | |
|---|---|
| PAMELA COWARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| FOOD LION, LLC ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on Plaintiff and Defendant's Motions for Summary Judgment. Plaintiff's motion is DENIED. Defendant's motion is GRANTED in part and DENIED in part as the Court allows Plaintiff's Title IV claim for a hostile work environment to proceed while granting the Defendant summary judgment for Plaintiff's retaliation claim.

I. FACTS

Plaintiff has been an employee at Food Lion since 1999. She is now suing for having suffered a hostile work environment under Title VII. The Plaintiff alleged that the following incidents of sexual assault occurred during her employment:

Plaintiff was first assaulted when Defendant's Store Manager Rocky Ester attempted to rape her when she was 16. Later, Plaintiff was raped by coworker "Eden" in 2004 or 2005. (Coward Dep. 266-268, June 8, 2010). Plaintiff was also violently raped by coworker "Edwin" during a Food Lion Business Trip in 2005. (Coward Dep. 191-200, 266). Plaintiff initially did not report these incidents.

1

Also during 2004 or 2005[1], Assistant Store Manager Chris Barnette made sexual proposals to Plaintiff, exposed himself to her, and rubbed his penis against her hand, all against Plaintiff protests. (Coward Dep. 138-140). Plaintiff initially did not report this incident.

In December 2007, Plaintiff transferred from Defendant's Store 1374 in Raleigh to Store 1557, also in Raleigh. On January 17, 2008, coworker Starvos Matthiadis slapped and rubbed her bottom. Plaintiff yelled at him, using several expletives. Matthiadis then blocked Plaintiff's passage, refused her requests to move, grabbed her breasts three times on the pretense of removing some dirt from her shirt, and put his hands inside her shirt to touch her navel. He also put his hands around her neck and hugged her hard enough that she could not breathe. He refused Plaintiff's requests to release her, so she had to push him away. Plaintiff states that a concerned customer witnessed the incident and asked her if she was alright. (Coward Dep. 110-112). Plaintiff responded by leaving the store immediately. Shortly after, Plaintiff told coworker Elizabeth Raimondo about the incident, who notified store manager Brian Roof. Roof contacted Human Resources and had Plaintiff leave work an hour and a half early for a few days to avoid being on the same schedule as Matthiadis. Food Lion Investigator Enitan Kalejaiye spoke to Plaintiff around January 22, and Plaintiff reported the earlier incident with Chris Barnette for the first time. (Coward Dep. 134-137). Barnette and Matthiadis denied the accusations, and the investigator could not substantiate Plaintiff's claims. (Coward Dep. 134).

Plaintiff next encountered Matthiadis while with Deli Manager, Saffie Conteh, on January 24, 2008. Although Plaintiff was visibly upset by seeing him again, Matthiadis rubbed the Plaintiff's shoulders and back, stating, "[h]ey sweetie. I missed this girl. I love this girl.

---

[1] Plaintiff was unable to provide a specific period for the Chris Barnette and Eden incidents.

2

Where she'd been?" Plaintiff pushed him away and told him to stop touching her. Conteh also told Matthiadis to stop touching Plaintiff and to leave her alone. (Coward Dep. 115)

On January 28, 2008, Plaintiff saw Matthiadis again while shopping in Store 1557. Matthiadis hugged Plaintiff from behind so hard that she could not breath, stating "Sweetie where are you." Plaintiff began crying and shaking, and pushed him away and told him not to touch her anymore. (Coward Dep. 119-122). Plaintiff's nephew, who was visiting, and the store cashier also told Matthiadis to leave Plaintiff alone. Plaintiff reported the incident to Roof, who apologized profusely, stating that Kalejaiye was supposed to have talked to Matthiadis but "obviously" had not yet. (Coward Dep. 123). After this incident, Matthiadis never bothered Plaintiff again. Yet in her motion for summary judgment, Plaintiff outlines several earlier incidents of sexual harassment with Matthiadis that she had not previously mentioned in her complaint or deposition.

Subsequent to reporting the final incidents with Matthiadis, Plaintiff was transferred twice until finally requesting to work at her present location of employment, Store 1484 in Raleigh, in April 2008. It was here that Plaintiff was again sexually harassed on March 25, 2010: Coworker Chris Galliher arrived at work intoxicated and told Plaintiff that he had a wild night, and said "I did everything in the book but to call [you] over, baby." At this time, Galliher placed his hands on Plaintiff's waist and pulled Plaintiff toward him. Plaintiff told him to let her go and pushed him away. Gallliher continued to make inappropriate comments to her throughout the day. (Coward Dep. 165-166). Plaintiff reported the incident to her supervisor, Douglas Wheeler, and Human Resources. (Coward Dep. 166-168). Galliher was suspended, but Plaintiff's cooperation with in-house Investigator Robin Green was very limited as she was evidently too

3

upset to discuss the incident. The investigation did not substantiate Plaintiff's claims. (Coward Dep. 173-177). In an effort to make Plaintiff more comfortable and reduce the possibility for any future conflict, the store manager assigned a different employee to take Galliher's duty in unloading the trucks in the deli department, which had previously put him into contact with Plaintiff. The store manager also ensured that a manager would accompany Plaintiff whenever she worked in areas where she may encounter Galliher.

Plaintiff continues to work for the Defendant.

## II. DISCUSSION

The Court denies the Defendant's Motion for Summary Judgment on Plaintiff's claim for a hostile workplace under Title VII, as a reasonable jury could find for Plaintiff on this claim.

In reaching this conclusion, the Court declines to consider incidents occurring earlier than 2008, as these events are time-barred. The Court also ignores the new allegations outlined in the Plaintiff's Motion for Summary Judgment. Yet considering only the alleged events in 2008 and 2010, the Court finds the Plaintiff provides adequate facts to overcome the Defendant's motion.

### A. Hostile Work Environment Claim

#### 1. Events occurring in 2004, 2005, and 2006

The Court cannot consider Plaintiff's claims of sexual harassment occurring before 2008. To have standing to file suit under Title VII, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC. In addition, the EEOC charge must be filed within 180 days of the occurrence of the alleged conduct. See Jenkins v. Trustees of Sandhills Comm. College, 259 F. Supp. 2d 432, 441 (M.D.N.C. 2003); 42 U.S.C. § 2000e-5(e)(1). Plaintiff filed her EEOC

4

charge on July 2, 2008. Thus, any alleged actions occurring more than 180 days prior to July 2, 2008 –i.e., before March 14, 2008 –are time-barred.

According, the Court cannot consider the Plaintiff's claims that she suffered two rapes, one attempted rape, and sexual exposure and assault as Plaintiff states that all these events occurred before 2008.

### 2. New Facts Alleged in Summary Judgment Motion

The Court will also not consider the additional events that Plaintiff alleged in her Motion for Summary Judgment as she improperly failed to include these allegations in her previous pleadings and testimony. It is well established that "a plaintiff may not avoid summary judgment by submitting an affidavit that conflicts with earlier deposition testimony." Alba v. Merrill Lynch & Co., 199 Fed. Appx. 288, 300 (4th Cir. 2006).

Here, the Defendant explicitly asked Plaintiff at the end of her deposition whether there were any other facts supporting her Title VII claim, and Plaintiff said there was not. (Coward Dep. 277). Now Plaintiff contradicts this response by offering several additional incidents of sexual harassment by Matthiadis. The Court cannot consider this new evidence.

### 3. Events in 2008 and 2010

Despite the exclusion of the above events, the Court finds the Plaintiff plead sufficient facts for a jury to award her a verdict for her Title VII claim. The Court thus denies summary judgment to Defendant on this issue.

To establish a claim for sexual harassment under Title VII, the Plaintiff must prove that (1) the subject conduct was unwelcome, (2) it was based on the sex of the Plaintiff, (3) it was sufficiently severe or pervasive to alter the Plaintiff's conditions of employment and to create an

5

Case 5:09-cv-00110-BO   Document 47   Filed 10/26/10   Page 5 of 9

abusive work environment, and (4) it was imputable on some factual basis to the employer. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). A court should consider all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. This standard is designed to "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.' " Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quoting Barbara Lindemann & David Kadue, Sexual Harassment in Employment Law 175 (1992)). At the same time, the standard "protect[s] working women from the kind of male attentions that can make the workplace hellish for women." Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir.1995). This standard is an objective one, and an individual plaintiff's sensitivities should not be considered. Mangum v. Town of Holly Springs, 551 F. Supp. 2d 439, 443 (E.D.N.C. 2008).

In a case where an employee is sexually harassed by a coworker, the employer can be liable if it knew or should have known about the harassment and failed to take effective action to stop it. Ocheltree v. Scollon Productions, Inc. 335 F.3d 325, 334 (4th Cir. 2003).

The Defendant claims that Plaintiff's allegations are not objectively severe or pervasive to create an abuse work environment under Title IV; the Court, however, finds a jury could conclude otherwise. Matthiadis blocked Plaintiff's passage and fondled her buttocks, breasts, stomach, and neck, all against her protests. Even after Plaintiff discussed this incident with supervisors, Matthiadis twice more touched Plaintiff inappropriately despite her being visibly upset and protesting on both occasions.

Defendant also claims that this conduct is not imputable to Food Lion. Yet a jury may very well conclude that Matthiadis only continued this behavior because the Defendant did not discuss his unacceptable behavior with him and warn him to stay away from Plaintiff in a timely matter. In her deposition for example, Plaintiff states that after she reported the second and third incidents to Store Manager Roof, he apologized several times and said that Investigator Kalejaiye should have spoken to Matthiadis and "obviously" had not yet. (Coward Dep. 123). This theory is consistent with Matthiadis's confusion regarding why Plaintiff's schedule had been changed. (Coward Dep. 115-122) ("Sweetie where are you... Where she'd been?"). Indeed, the Defendant claims that Kalejaiye talked to Matthiadis and counseled him on the store's harassment policies, but does not state what date this occurred. (Kalejaiye Aff. 2, July 23, 2010; Def.'s Mot. Summ. J. 4; Roof Aff. 3, July 6, 2010). In addition, while Defendant states the date it spoke to Galliher and provides the sexual harassment policy it required Galliher to sign after investigating the accusations against him, it offers neither for Matthidis. (Green Aff. 3, July 23, 2010). As Defendant states the Matthiadis investigation ended in March 2008, the Court is left to wonder at what point during the nearly three month investigation that anyone actually spoke to Matthiadis. (Kalejaiye Aff. 3).

As to Plaintiff's allegations regarding coworker Chris Galliher on March 25th, 2010, the Court does not find these claims necessary to her sexual harassment claim. They can however, be included in her claim. Although the incident occurred in a different store and two years later than the incidents with Matthiadis, a jury could view the event added to the "pervasive" conditions of the three earlier incidents. In addition, a jury could find the Defendant's conduct imputable if it

did in fact allow a visibly intoxicated employer to work and did nothing to stop his allegedly inappropriate comments to Plaintiff that continued throughout the day.

Therefore, a reasonable jury could find the Defendant liable for a hostile work environment, and the Court allows the Plaintiff's Title VII claim to proceed.

B. Retaliation Claim

The Court grants summary judgment to Defendant on Plaintiff's Title VII retaliation claim. To establish a case for retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action. Beall v. Abbott Laboratories, 130 F. 3d 614. 619 (4th Cir. 1997). Plaintiff claims that Defendant retaliated against her by demoting her and cutting her hours. However, Plaintiff has not alleged facts showing either of these claims.

Plaintiff first alleges she was demoted from Deli Manager to Cake Decorator. However, the only evidence Plaintiff presents to support this demotion is the title listed on her pay stubs. Plaintiff's actual pay was not decreased, nor where her responsibilities diminished. To the contrary, Plaintiff assumed more duties after reporting sexual harassment to her superiors, and was given a raise in January 2009. (Coward Dep. 270-273).

Plaintiff also contends that her hours were cut after she reported harassment. She alleges this occurred in store 1557 when Defendant asked her to leave work early to avoid Matthiadis while the store investigated her harassment claims. Plaintiff admits however, that she only had to leave an hour and a half early for a few days at most. (Coward Dep. 216-217). This act is insufficient to constitute adverse employment action.

8

In addition, Plaintiff claims her hours were cut after she was transferred from 1557 to other Food Lion locations. However, Plaintiff's allegations on this subject are vague and difficult to follow, especially as Plaintiff admits missing many hours of work for her own personal reasons. (Coward Dep. 244). Assuming her hours were in fact cut, Plaintiff has not pled facts showing that this occurred in retaliation for her reporting sexual harassment. To the contrary, Defendant helped her find work at other locations after Plaintiff quit store 1557 in an emotional moment. Id.

Thus, the Plaintiff has not showed she was retaliated against and the Court grants summary judgment on this issue to the Defendant.

### III. CONCLUSION

The Court denies summary judgment to the Defendant for Plaintiff's claim for hostile work conditions, but grants summary judgment to Defendant for Plaintiff's retaliation claim. In addition, the Court denies Plaintiff's Motion for Summary Judgment as a jury must resolve the material issues of whether the alleged harassment was sufficiently severe or pervasive to constitute a hostile work environment and whether the Defendant was responsible for this harassment under Title VII.

SO ORDERED, this 22 day of October, 2010.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE